## TERRITORY *v.* FRITZ KRAFT.

## No. 2186.

SUBMITTED MARCH 28, 1935.                    DECIDED APRIL 17, 1935.

COKE, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY BANKS, J.

On the 7th day of August, 1934, Theodore Roosevelt Lilly filed in the district court of Honolulu a verified information alleging in substance that Fritz Kraft, on the 27th day of July, 1934, for hire and reward and without having complied with the provisions of Act 103, L. 1933, and in violation of the provisions thereof, took certain photographs of a group including Franklin D. Roosevelt, President of the United States, and Joseph B. Poindexter,

governor of the Territory of Hawaii, while they were visiting the Shriners' Hospital for crippled children in Honolulu and sold the same for thirty-five cents a copy. Upon this information a warrant of arrest was issued and served on the defendant, who was duly brought before the magistrate to answer the charge made against him. By way of defense he filed a demurrer challenging the constitutionality of the Act. The demurrer was overruled. The defendant was adjudged guilty and was sentenced to pay a fine of five dollars together with costs of court amounting to two dollars and fifty cents. The defendant appealed to this court on points of law, which, like the demurrer, present constitutional questions.

For the purposes of the instant case the following is a sufficient summary of the Act under consideration: Section 1 creates a territorial board of photography and provides for the appointment of its members. Section 2 defines a professional photographer as "a person who holds himself out to the public as a practicing photographer skilled in the knowledge and science of photography and who makes photographs for compensation or for sale, or for hire." Section 4 provides for the exemption from examination of all persons who for a continuous period of three years immediately preceding the appointment of the board have been practicing photography in the Territory and authorizes the issuance to such persons of a certificate upon payment of a fee of five dollars. Section 6 relates to the investigation and examination of applicants and the issuance of certificates. Sections 7 and 8 relate to the periods and methods of examination and the powers of the board in connection therewith. Section 9 relates to the residence and age of applicants and the condition upon which they are entitled to practice or assume to practice as certified professional photographers. Section 10 relates to the power of the board to waive examination in certain in-

stances. Section 11 relates to the payment of an annual fee by those receiving certificates. Section 12 relates to the power of the board to revoke certificates. Section 13 relates to the payment of fees by applicants for examination. Section 14 provides for the exemption from the Act of certain classes of persons and photographic work for certain purposes. Section 15 relates to the salary of the secretary of the board. Section 16 relates to the payment of expenses of the board and provides for the deposit of the funds received with the Territory. Section 9 reads: "Any bona fide resident of the Territory over the age of twenty years who has passed a satisfactory examination (unless otherwise exempt from such examination as herein provided), shall receive a certificate of his qualifications to practice as a certified professional photographer. No other person and no corporation shall assume or use such title, or any other words, letters or figures, to indicate that such person is a certified professional photographer." Section 17 is as follows: "Any person who shall practice or hold himself out as qualified to practice photography in the Territory of Hawaii without first having complied with the provisions of this Act, or who shall violate any provisions of this Act, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not exceeding two hundred dollars or by imprisonment for a term not exceeding one year, or by both such fine and imprisonment."

But for the provision of section 17 which prohibits any one from practicing photography in the Territory without first having complied with the provisions of the Act we would be willing to say that all the legislature intended to prohibit was the holding out by one as a certified professional photographer when in fact he had not been so certified by the board. This would place our Act in the same category as the statutes of New York, Texas, Louisiana

and Alabama, which relate to accountants and which have been held constitutional. Our own legislature in 1923 also enacted a statute relating to accountancy (now Ch. 228, R. L. 1935) and, like New York, Texas, Louisiana and Alabama, limited the restriction which it laid upon those following this business to *falsely assuming to be certified accountants* and left the right to engage in it, when there was no such assumption, untrammeled. In this respect the accountancy statute is unlike Act 103 which prohibits all persons, except those who are not required to take an examination, from practicing photography who have not received a certificate from the board of examiners. With this construction of Act 103 in mind let us consider its constitutionality.

The Territory of Hawaii derives its legislative powers from section 55 of the Organic Act. This grant of power is thus expressed in the first sentence of the section: "The legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable."

The primary question therefore presented by the appeal is whether by the passage of Act 103 the legislature exceeded the powers conferred upon it. More specifically the question is, Was it within the constitutional power of the legislature to exclude from the practice of photography for profit all persons who had not complied with the provisions of the Act? The answer to this inquiry depends on the nature of photography—whether as an occupation it is innocent and innocuous or whether it is infected with some quality that might render it dangerous to the morals, the health, the comfort or the welfare of those who constitute the public. If the latter is true it is within the police power of the legislature to place upon it the regulations and restrictions contained in the Act. If on the other hand the practice of photography is harmless and

without detriment to the public welfare it was beyond the power of the legislature to restrict it to those having a certificate of proficiency.

The governing principle has many times been announced and applied by courts of last resort. In *Bessette v. The People,* 193 Ill. 334, the court had before it the validity of a statute quite similar to our photography statute. Under the Illinois law no one was permitted to engage in the business of horseshoeing who had not passed an examination given by a board and received from the board a certificate of his qualifications and paid a license fee. In holding the statute unconstitutional the court said (pp. 343-344, 346) : "The general rule is, that a license fee will not be exacted for the purpose of regulating any trade, calling or occupation, unless there is something in the nature of such trade, calling or occupation, or in the circumstances surrounding it, which calls for the exercise by the State of its police power. In other words, licenses for regulation merely, and not for revenue, can only be justified upon the ground that a necessity exists for the exercise by the State, either directly, or through delegation to municipal corporations, of its police power. The police power is limited to enactments which have reference to the public health or comfort, or to the safety or welfare of society. * * * An application of the principles above referred to to the provisions of this Act of 1897 in relation to the business of horseshoeing condemns it as an invalid law. It is impossible to conceive how the health, comfort, safety or welfare of society is to be promoted by requiring a horse-shoer to practice the business of horse-shoeing for four years, and submit to an examination by a board of examiners, and pay a license fee for the privilege of exercising his calling. The ends to be secured by the exercise of the police power are the public health, comfort, safety or

welfare, but this measure has no relation to the ends thus specified. If this Act is valid, then the legislature of the State can regulate almost any employment of the citizen by the requirement of previous study, and previous examination, and the payment of a license fee, and the issuance of a license."

In *State* v. *Riedell,* 233 Pac. (Okl.) 684, 691, the court had before it a statute regulating the business of accountancy. The proceeding was in *quo warranto,* the purpose of which was to prohibit the defendants from holding themselves out to the public and practicing as professional accountants without first having passed an examination before the board of accountancy created by the Act and without having received a certificate from the board. What the defendants were charged with doing was prohibited by the Oklahoma statute, so that the question before the court was whether the prohibition was a violation of the defendants' constitutional rights. In holding that it was the court said: "Our conclusion * * * is that the Act in so far as it prohibits uncertified accountants from holding themselves out as professional or expert accountants or auditors for compensation or engaging in the practice of that profession, is in conflict with the spirit and express provision of the Constitution and void, in this, that it abridges the right of private property and infringes upon the right of contract in matters purely of private concern bearing no perceptible relation to the general or public welfare, and thereby tends to create a monopoly in the profession of accountancy for the benefit of certified accountants, and denies to uncertified accountants the equal protection of the laws and the enjoyment of the gains of their own industry. The defendants are not engaged in the exercise of a franchise, but a constitutionally guaranteed right."

It is unquestionably true that the police power of the State has an ever-widening horizon. It is nevertheless not boundless and its exercise is still under the control of certain classic principles of constitutional law. It cannot infringe upon the guaranteed right of the citizen to life, liberty or property and the pursuit of happiness unless in the exercise of this right the public health, safety or welfare is imperiled. In *Territory* v. *McCandless*, 24 Haw. 485, 486, the court said (in a syllabus) : "The police power is broad in its scope but it is subject to the just limitation that it extends only to such measures as are reasonable in their application and which tend in some appreciable degree to promote, protect or conserve the public health, morals or safety or the general welfare." Included in this guaranty, but subject always to the common weal, is the right of the citizen to choose and pursue without unreasonable governmental hindrance any legitimate occupation which appeals to his talents or that is conducive to his success and happiness.

*Adams* v. *Tanner,* 244 U. S. 590, applies this principle which was also announced by the United States Supreme Court in earlier cases. In the *Adams* case the court had under consideration the employment agency law of the State of Washington which prohibited any employment agent from receiving a fee for furnishing any person with employment or with information leading to employment. In declaring that the law violated the liberty of the citizen to engage in a lawful calling and was therefore unconstitutional the court said (pp. 594, 595, 596) : "Because abuses may, and probably do, grow up in connection with this business, is adequate reason for hedging it about by proper regulations. But this is not enough to justify destruction of one's right to follow a distinctly useful calling in an upright way. Certainly there is no profession,

possibly no business, which does not offer peculiar opportunities for reprehensible practices; and as to every one of them, no doubt, some can be found quite ready earnestly to maintain that its suppression would be in the public interest. Skillfully directed agitation might also bring about apparent condemnation of any one of them by the public. Happily for all, the fundamental guaranties of the Constitution cannot be freely submerged if and whenever some ostensible justification is advanced and the police power invoked. The general principles by which the validity of the challenged measure must be determined have been expressed many times in our former opinions. It will suffice to quote from a few. In *Allgeyer* v. *Louisiana,* 165 U. S. 578, 589, we held invalid a statute of Louisiana which undertook to prohibit a citizen from contracting outside the State for insurance on his property lying therein because it violated the liberty guaranteed to him by the Fourteenth Amendment. 'The liberty mentioned in that amendment means not only the right of the citizen to be free from the mere physical restraint of his person, as by incarceration, but the term is deemed to embrace the right of the citizen to be free in the enjoyment of all his faculties; to be free to use them in all lawful ways; to live and work where he will; to earn his livelihood by any lawful calling; to pursue any livelihood or avocation, and for that purpose to enter into all contracts which may be proper, necessary and essential to his carrying out to a successful conclusion the purposes above mentioned.' 'If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the

statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' *Booth* v. *Illinois,* 184 U. S. 425, 429. 'It is also true that the police power of the State is not unlimited, and is subject to judicial review, and when exerted in an arbitrary or oppressive manner such laws may be annulled as violative of rights protected by the Constitution. While the courts can set aside legislative enactments upon this ground, the principles upon which such interference is warranted are as well settled as is the right of judicial interference itself. The legislature being familiar with local conditions is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power. * * * If there existed a condition of affairs concerning which the legislature of the State, exercising its conceded right to enact laws for the protection of the health, safety or welfare of the people, might pass the law, it must be sustained; if such action was arbitrary interference with the right to contract or carry on  business, and having no just relation to the protection of the public within the scope of legislative power, the act must fail.' *McLean* v. *Arkansas,* 211 U. S. 539, 547, 548."

In *New State Ice Co.* v. *Liebmann,* 285 U. S. 262, 278, the court said: "Plainly, a regulation which has the effect of denying or unreasonably curtailing the common right to engage in a lawful private business, such as that under review, cannot be upheld consistently with the Fourteenth Amendment. Under that amendment, nothing is more

clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.' *Burns Baking Co.* v. *Bryan,* 264 U. S. 504, 513, and authorities cited; *Liggett Co.* v. *Baldridge,* 278 U. S. 105, 113."

No business, however innocent and harmless, is entirely free from the possibility of becoming, under improper or dishonest management, in some degree inimical to the public interest. The business of shining shoes unless efficiently conducted might result in injury to the material of which shoes are made. A dry goods business might if operated by a dishonest or ignorant owner result in foisting on the public unskillfully made or otherwise shoddy clothing. The business of horseshoeing might likewise be injurious. So with the business of accounting. And yet no court has ever held that it is within the police power of the State to impose upon those desiring to follow such occupations the necessity of passing an examination as to their qualifications and obtaining a certificate of proficiency and honesty. So far as horseshoeing and accountancy are concerned, as we have seen, such a requirement has been held unconstitutional.

So long as the police power is confined to its legitimate purpose and is not through some fallacy of logic given a specious recognition it is of inestimable value; otherwise there is danger of its becoming an evil. There is as great peril to the public in its injudicious extension as in its injudicious restriction. In other words, as a servant of the people it is invaluable but as their master it might become intolerable.

It is contended by the Territory that the practice of photography for commercial purposes may, unless restrict-

ed by the regulations contained in the Act, be injurious to the public because the practitioner, if unskilled in his art or dishonest in his methods, may impose upon those dealing with him, in ignorance of his lack of skill or his dishonesty, by taking pictures that are of inferior quality or by taking a deposit on orders for the enlargement of photographs, which orders are never filled.

A like argument must have been made, but without success, in the horseshoeing case and also without success in the accounting case. If this should be held to be a sound argument the police power could be used to lay upon any business, however unrelated to the general welfare, burdensome and unreasonable restrictions. This would be to extend this great power beyond its recognized limits and to convert it from a shield into a sword. Instead of furnishing needed protection to the public it would, as in the instant case, confer upon a board of examiners, composed entirely of professional photographers, the power to grant to a selected number the right of pursuing a useful and innocent business. This would be to create a monopoly and thus exclude from the business many competent persons who might find in it a congenial occupation and a means of livelihood.

It is also contended by the Territory that unless the practice of photography as a commercial business is confined to those whose ethical qualifications are ascertained and certified by the board of examiners the public morals would be endangered by the taking and sale of lewd and lascivious pictures. If by the passage of Act 103 it had been in the mind of the legislature to protect the public against the evil influence of pornographic pictures it most certainly would not have confined the restrictions contained in the Act to those engaged in that vocation for profit but would have included amateur photographers as

well, the activities of such photographers being potentially as harmful to the public morals as those of commercial photographers. The lawmaking body of course knew at the time Act 103 was passed that under the broad provisions of section 4420, R. L. 1925 (now § 5707, R. L. 1935), relating to obscene and other prohibited publications, the public was already safeguarded against such pictures and that further protection was unnecessary.

As has been foreshadowed by what we have already said, it is our conclusion that Act 103, in so far as it prohibits those who have not passed an examination and received an official certificate from practicing or holding themselves out as competent to practice photography for profit in the Territory of Hawaii, is an unconstitutional encroachment upon the liberty of the citizen to choose and pursue an innocent occupation. It is not necessary to decide in the instant case whether it was within the power of the legislature to prohibit one from practicing as a *certified* professional photographer or holding himself out as *such* when he had not been so certified.

The appeal is sustained and the case is remanded to the district magistrate with instructions to set aside the judgment heretofore entered by him and in lieu thereof to enter a judgment discharging the defendant.

*C. Y. Shimamura,* Special Assistant Public Prosecutor, for the Territory.

*E. J. Botts* for defendant.