TERRITORY OF HAWAII *v.* EDWARD WONG, TINEI SUA, FELIPE BERNAL, HAROLD LEWIS, JR., AND WALLACE KAWAKAMI.

NO. 2952.

TERRITORY OF HAWAII *v.* WALTER HONG, WILLIAM J. KIM, HENRY DOI, MASATO KAWAKAMI, MASAMI YOSHIDA, CHUN YEU, ROBERT CHING, TAKEO TANAKA, MUN SONG HO AND HIDEO NISHIKAWA.

NO. 2953.

ARGUED DECEMBER 7, 1953.     DECIDED FEBRUARY 24, 1954.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY TOWSE, C. J.

Plaintiffs in error were found guilty upon trial, jury waived, of the offense of being present in a barred or barricaded place "* * * where are exhibited or exposed to view * * * gambling implements * * * used in any

game * * * in which money or anything of value is lost
or won * * *." (R. L. H. 1945, § 11345.)

Writs of error bring the judgments to this court.
The causes were consolidated for briefing and argument.

The evidence adduced below consisted principally of
the testimony of two officers of the vice squad of the
Honolulu Police Department, both testifying to sub-
stantially the same facts. At or about 9:00 o'clock p. m.,
they, in company with two other officers, proceeded to
certain private premises in Honolulu, where, upon ar-
rival, they circled the premises and at the rear two of
the officers mounted a stone wall three and one-half feet
high. From that point they "heard the shuffling of domi-
noes and a group of men talking and using gambling
terms" emanating from a frame structure some five feet
from the wall. From that position they also observed
fifteen men gathered around a table engaged in a game
of "pai kau," a gambling game played with dominoes and
chips. They also observed currency upon the table. Un-
obstructed visibility was possible through a three-foot
wire mesh screen, which extended around the entire
structure between the ceiling and the top of its seven-
foot wooden walls. The structure was approximately
nine by twenty feet, with wooden flooring six inches off
the ground. There were no windows or other apertures
in the walls. The one-quarter inch mesh wire screen ex-
tended three feet from the top of the seven-foot walls
to the roof around the entire structure.

After observing the game in progress for several
minutes the officers proceeded to the front entrance of
the premises to effect an entry. There they were con-
fronted with a seven-foot wall, a locked gate, and a
watchman standing near the gate, who, upon observing
them, shouted: "Vice Squad, Police!"

One of the officers testified that immediately fol-

lowing: "We said, 'We are police officers, you are under arrest for gambling.' * * * We said it in a loud voice. It would have been audible to the watchman. We were right next to the watchman who spotted us. We told them to open the door. We hollered at the watchman and told him to open the door with his keys." Despite the foregoing, the watchman continued to shout: "Vice Squad, Police come!"

Upon refusal of the watchman to unlock the gate, the officers attempted to gain entrance by breaking through it. They were unsuccessful, ultimately being forced to scale the gate. The gate was seven feet high and constructed of two by fours and wire mesh. Upon scaling the gate the officers found the only door of the structure locked from within. That door was also constructed of two by fours with no paneling and a latch and metal lock on the inside. Their testimony was that "it was constructed a little stronger than an ordinary house door." It was forced open.

All of the fifteen defendants were standing at or near a table in the center of the room from which twenty-one pai kau dominoes, several green chips and currency were seized.

Section 11345 of the Revised Laws of Hawaii 1945 provides: "Sec. 11345. *Presence in barricaded place.* Every person found present in any such room, house, or place barred or barricaded, or otherwise built or protected in a manner to make it difficult of access or ingress to police officers where are exhibited or exposed to view any cards, dice, dominoes, or any gambling layout, or any part of such layout or any other gambling implements whatsoever used in any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game, played with cards, dice, dominoes, or any device for money, checks, credit or any representative of value, or

any other game in which money or anything of value is lost or won, is guilty of misdemeanor."

The defendants contend that there was insufficient evidence to support the findings of the trial judge that the structure "was in fact and law a barred or barricaded place." They contend first, that since entry could have been made upon the premises over the three-foot wall in the rear of the structure rather than by scaling the seven-foot gate at the front, that the three-foot wall did not constitute the structure a barred or barricaded place difficult of access or ingress; and second, that the metal lock on the inside of the door being merely an "ordinary" lock, did not "make it difficult of access or ingress to police officers." (R. L. H. 1945, § 11345.) In substance the appellants' contentions attack the terms "barred or barricaded" as not including an ordinary private residence or room, where doors are locked or bolted in the ordinary method.

We deem it necessary to determine only the latter contention, there being ample evidence in our opinion establishing that the frame structure itself, and not the wall surrounding it, constituted a barred or barricaded place within the purview of the statute.

Section 11345 of the Revised Laws of Hawaii 1945, must be construed in *pari materia* with section 11344 of the Revised Laws of Hawaii 1945. (*Territory* v. *Ah Fook Young,* 39 Haw. 422.) It defines a barred or barricaded place as "any room, house or place barred or barricaded or otherwise built or protected in a manner to make it difficult of access or ingress to police officers * * *" or, "* * * any room, house, or place where the doors are locked and the windows are screened so as to make it difficult for police officers to enter into the room, house or place * * *."

Appellants contend that the ordinary metal lock of

the door does not bring their presence in the structure within the purview of the statute, arguing that these facts demonstrate that the structure and the nature of its walls did not constitute it a barred or barricaded place since it was not "built or protected in a manner to make it difficult of access or ingress to police officers" as defined in sections 11344 and 11345. This contention falls upon examination of the controlling provision of section 11344 which prohibits the exhibiting of gaming implements "in any room, house, or place where the doors are locked and the windows closed and screened so as to make it difficult for police officers to enter into the room, house or place * * *." (R. L. H. 1945, § 11344.) We deem it unnecessary to determine whether the structure constituted a "room" or "house"; the term "place" being sufficiently broad in meaning to encompass a structure of the nature described *supra*. It would further appear in the circumstances here presented, that the premises were "built or protected in a manner to make it difficult of access or ingress to police officers" by reason of the seven-foot fence, the locked gate, and the presence of the watchman (R. L. H. 1945, § 11344).

There being no dispute that all of the defendants were present in the structure, we consider that the trial judge was amply warranted in finding the defendants guilty of the offense charged. That the door was locked from within by means of a latch and an ordinary metal lock constitutes no basis for determining otherwise; the use of the lock in the circumstances constituting ample evidence bringing the structure within the express terms of the statute as "* * * a place where the doors are locked and the windows closed and screened so as to make it difficult for police officers to enter * * *." (R. L. H. 1945, § 11344.) There were no windows of conventional design such as are used in a structure or build-

ing designed as a residence. We do not conceive this fact as altering in any manner the ultimate purpose of the statute or limiting its applicable provisions to a factual determination of architectural ingenuity predicated upon original design or use of a structure. The circumstances presented amply serve to illustrate this since the structure in question was originally designed and built as a horticultural hothouse and later converted into a storeroom for restaurant and catering supplies. The absence of conventionally designed windows, and the presence of the permanent, partially screened portion extending above the boarded walls to the ceiling serving as window apertures, *per se* constituted the structure difficult of access or ingress to police officers. In addition thereto, the sole means of entry being a heavier than ordinary door locked from within, which was required to be forced for entry, constituted additional evidence indicating that the structure, when in use as an enclosed gaming situs, was within the terms of the statute.

In view of the plain intendment of the statute, the object of which is "directed at facilitating the detection and arrest of persons in such places designedly 'barred or barricaded or otherwise built or protected in manner to make it difficult of access or ingress to police officers' * * *" (*Territory* v. *Ah Fook Young,* 39 Haw. 422, 425, 426), the contentions of the appellants are without merit.

The judgments are affirmed.

*G. T. Nakamura* (*Y. Fukushima* with him on the briefs), for plaintiffs in error.

*G. F. St. Sure,* Assistant Public Prosecutor (also on the brief), for defendants in error.