STATE OF HAWAII *v.*
SAMUEL SHIGEMATSU, ET AL.

No. 4989.

STATE OF HAWAII *v.*
THOMAS I. FREEMAN, ET AL.

No. 4990.

April 7, 1971.

Richardson, C.J., Marumoto, Abe, Levinson, JJ., and
Circuit Judge M. Doi in Place of Kobayashi, J.,
Absent on Account of Illness.

OPINION OF THE COURT BY ABE, J.

The defendants were originally charged in the district court with the violation of HRS § 746-6[1] because they "were found present in a room or place barred, or barricaded, or built, or protected in a manner to make it difficult of access or ingress to police officers where gambling implements were exhibited or exposed to view."

The district court denied the defendants' motions for dismissal in both cases and upon demands for jury trial, the cases were committed to the Circuit Court of the First Circuit for jury trial. Prior to jury trial, both cases were consolidated for hearing on the motions for dismissal.

---

[1] HRS § 746-6 reads:

*"Presence in barricaded place.* Every person found present in any such room, house, or place barred or barricaded, or otherwise built or protected in a manner to make it difficult of access or ingress to police officers where are exhibited or exposed to view any cards, dice, dominoes, or any gambling layout, or any part of such layout or any other gambling implements whatsoever used in any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game, played with cards, dice, dominoes, or any device for money, checks, credit, or anything representative of value, or any other game in which money or anything of value is lost or won, is guilty of a misdemeanor."

After the hearing, the circuit court ruled that HRS § 746-6 was unconstitutional and dismissed the charges against the defendants. The State appealed from this ruling.

## I.

The first question before us is whether the statute is so vague and overly broad that it violates the due process of law clauses of the United States Constitution and the Hawaii State Constitution. Not too long ago we struck down an ordinance which made the presence at a cockfight a criminal offense and we said:

> "A fundamental aspect of the somewhat amorphous concept of due process of law is that a penal statute must state with reasonable clarity the acts it proscribes. *Territory* v. *Naumu,* 43 Haw. 66 (1958); *Territory* v. *Anduha,* 31 Haw. 459 (1930), *aff'd,* 48 F.2d 171 (9th Cir. 1931). A criminal statute is unconstitutional if it is not sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. . . . And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. *Connally* v. *General Const. Co.,* 269 U.S. 385, 391 (1926)." *State* v. *Abellano,* 50 Haw. 384, 385, 441 P.2d 333, 334 (1968).

The State attempts to differentiate the offenses of "being present at a cockfight," or "being present at a gambling game" from the offense charged here. It argues that under HRS § 746-6, "the requirement of presence . . . is within a narrowly confined place . . . so that a determination of presence is unquestionable." We disagree with the State. We see no difference; the offense charged here is the pres-

ence of persons in a room barricaded or otherwise so built or protected to make access or ingress to police officers difficult and where gambling implements were exhibited or exposed.

Any home built with locks in the doors would come within the term "any such room, house or place . . . built or protected in a manner to make it difficult of access or ingress to police officers." Also, the statute makes it an offense for any person to be present in such "room, house or place," where any gambling implements, such as cards, dice, dominoes, etc., are exhibited or exposed. Thus, it would appear that any person within a room of his home where cards, dice or chips are in view would be violating the statute.

We have no doubt that the statute is vague and overly broad and therefore violates the due process of law guaranteed by the Fourteenth Amendment of the Constitution of the United States and Article I, Section 4 of the Constitution of the State of Hawaii.

## II.

The statute, besides being vague and overly broad, suffers further constitutional deficiencies.

It is generally recognized that in the exercise of its police power the State may curtail or restrict acts of individuals unless the curtailments or restrictions unreasonably infringe upon the fundamental personal rights of individuals. *Territory* v. *Kraft,* 33 Haw. 397 (1935).

The State, in the legitimate exercise of its police power, has proscribed by the statutes all forms of gambling. But, apparently, to alleviate the enforcement problems inherent in gambling statutes the legislature enacted the statute in question. The issue here is whether for the purpose of suppressing the evils of gambling, the State may make the

mere presence on premises meeting the description set forth in HRS § 746-6, and where cards, dice or other gambling implements are in view a criminal offense. Perhaps it is correct that people who go to places such as the sites where the defendants were arrested would probably do so to gamble. However, this does not preclude the possibility that others may enter such premises for purposes other than gambling without knowing that gambling is being carried on. Then, some people may enter such premises merely to watch others gamble.

The State may argue that the statute in question is rationally related to the suppression of gambling. The gist of the offense under the statute is the mere presence on the premises fitting the description of HRS § 746-6[2], where gambling implements are exhibited or exposed to view. Yes, the statute may facilitate the suppression of gambling. To convict one under the statute, gambling need not be proved because the offense is mere presence. Thus, all persons found on the premises, whether they were participating in gambling, bystanders merely watching others gamble, or other innocent persons who just happened to be there at the time of the arrest without any prior knowledge of gambling, would all be chargeable with the violation of the statute. It would be like a contraption made to catch those guilty of gambling at the expense of the innocent. Should such an overly broad statute be upheld because it would help in suppressing gambling?

It is true the statute may suppress gambling and the evils connected therewith, but though the suppression of gambling may be "legitimate and substantial, that pur-

---

[2] In Territory v. Ah Fook Young, 39 Haw. 422, 425-426 (1952), this court correctly noted that the statute "constitutes an additional prohibition against mere presence as it relates to a barred or barricaded place wherein gambling devices are exhibited or exposed to view." And it went on to say that the statute does not "require that the implements be in actual use in a gambling game in which money or anything of value is lost or won at the time of arrest."

pose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means of achieving the same basic purpose." *Shelton* v. *Tucker*, 364 U.S. 479, 488 (1960).

The United States Supreme Court in *Talley* v. *California*, 362 U.S. 60, 64 (1960) said:

"Counsel has urged that this ordinance is aimed at providing a way to identify those responsible for fraud, false advertising and libel. Yet the ordinance is in no manner so limited, * * *. Therefore, we do not pass on the validity of an ordinance limited to prevent these or any other supposed evils. This ordinance simply bars all handbills under all circumstances anywhere that do not have the names and addresses printed on them in the place the ordinance requires.

"There can be no doubt that such an identification requirement would tend to restrict freedom to distribute information and thereby freedom of expression. 'Liberty of circulation is as essential to that freedom as liberty of publishing; indeed, without the circulation the publication would be of little value.' *Lovell* v. *Griffin*, 303 U.S., at 452."

And the United States Supreme Court held the ordinance void on its face.

In the Bill of Rights of the Hawaii State Constitution it is declared: "All persons are free by nature and are equal in their inherent and inalienable rights. Among these rights are the enjoyment of life, liberty and the pursuit of happiness, * * *."[3]

It appears to us that among the rights encompassed under the term "inalienable rights" for the "enjoyment of life, liberty and the pursuit of happiness," are freedom of

---

[3] Art. I, Sec. 2, Constitution of the State of Hawaii.

610

movement and freedom of association. Such rights are necessary foundations to our American way of life since their absence or denial characterizes confinement and imprisonment.

They are just as important and vital to our way of life as the rights or freedoms more specifically enumerated in Sections 3 to 19 in our Bill of Rights, Article I, Constitution of the State of Hawaii. Thus, we have no doubt that our State Constitution does guarantee to the people of Hawaii the freedom of movement[4] and freedom of association.[5]

Also, we believe the importance of these fundamental rights is coming more and more to the foreground in our modern mobile and fluid society. Thus, it would be utmost folly to underestimate the influence of these two freedoms in our free society. Freedom would be incomplete if it does not include the right of men to move from place to place, to walk in the fields in the country or on the streets of a city, to stand under open sky in a public park and enjoy the fresh air, to lie down on a public beach and enjoy a sunbath, to visit a friend in his home and enjoy an evening together, and the right to associate with others in the enjoyment of an avocation or a vocation.

As we have recognized, under the State's police power "[c]onduct remains subject to regulation for the protec-

[4] "[T]he right to travel is a part of the 'liberty' of which the citizen cannot be deprived without due process of law under the Fifth Amendment. * * * In Anglo-Saxon law that right was emerging at least as early as the Magna Carta. * * * It may be as close to the heart of the individual as the choice of what he eats, or wears, or reads. Freedom of movement is basic in our scheme of values." Kent v. Dulles, 357 U.S. 116, 125-126 (1958).

[5] "Right of free association, a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." Shelton v. Tucker, 364 U.S. 479, 486 (1960), which cites De Jonge v. Oregon. 299 U.S. 353, 364 (1937) and Bates v. Little Rock, 361 U.S. 516, 522-523 (1960). These two cited cases recognize that "freedom of association for the purpose of advancing ideas and airing grievances is protected by the Due Process Clause."

tion of society. * * * In every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell* v. *Connecticut,* 310 U.S. 296, 304 (1940). This court's attention has been called to possible legislative abridgment of fundamental personal rights and liberties and we "should be astute to examine the effect of the challenged legislation. Mere legislative preferences or beliefs respecting matters of public convenience may well support regulation directed at other personal activities, but be insufficient to justify such as diminishes the exercise of rights so vital to the maintenance of democratic institutions." *Schneider* v. *State,* 308 U.S. 147, 161 (1939).

Thus, to determine the legality of the statute, we are required to weigh two conflicting interests: on one hand, the interest of the State to suppress gambling and the evils connected therewith; and on the other hand, the rights of the people to the freedom of movement and association.

It may appear to some that the infringement imposed by this statute is not too great, and the crime charged is not too serious. However, neither the relative insignificance of the crime nor slightness of the penalty imposed should blind us to the potential threat that this type of law presents to the freedom of movement and association. It must be remembered that "unconstitutional practices get their first footing * * * by silent approaches and slight deviations from legal modes of procedure." *Boyd* v. *United States,* 116 U.S. 616, 635 (1886). As we have stated, there is no question that the State may in the exercise of its police power enact legislation to proscribe gambling and thereby suppress the evils connected therewith. However, recognizing that the statute places an unlimited and indiscriminately sweeping infringement upon the freedom of movement and association, we believe that the statute goes

much further than necessary to achieve its purpose. We hold that the statute violates Art. I, Sec. 2 of the Hawaii State Constitution and, therefore, is void and unenforceable.

Here, having found that the statute denies freedom of movement and freedom of association, guaranteed by Art. I, Sec. 2 of the Hawaii State Constitution, we find it unnecessary to decide whether the statute violates the provisions of the Constitution of the United States other than the due process clause mentioned in Part I.

For the reasons stated above, the defendants' dismissals are affirmed.

*Joseph A. Kinoshita,* Deputy Prosecuting Attorney (*Barry Chung,* Prosecuting Attorney, with him on the briefs) for plaintiff-appellant.

*T. Irving Chang* (*Jack H. Mizuha* with him on the brief) for defendants-appellees.

---

CONCURRING OPINION OF CIRCUIT JUDGE M. DOI

I concur on the basis that the statute in question, HRS § 746-6, violates the due process clause of both state and federal constitutions in that it is too broad and vague.

The statute is obviously intended to suppress gambling by making mere presence in a described set of circumstances a crime on the reasoning that the circumstances described lead to an inescapable or at least highly probable conclusion that anyone found in them must have been engaging in or abetting gambling.

Under the statute, a person is guilty if he is found present "in such room, house or place barred or barricaded, or otherwise built or protected in a manner to make it difficult of access or ingress to police officers where are exhibited or exposed to view any cards, dice, dominoes

\* \* \*." *HRS* § *746-6.* The "room, house or place" referred to includes, by *pari materia* construction, a "room, house, or place where the doors are locked and the windows closed and screened \* \* \*", as described in HRS § 746-5. *Territory* v. *Wong & Hong, et als.,* 40 Haw. 423 (1954).

Cards, dice and dominoes are common items in frequent use in innocent pastimes as well as in gambling. Locked homes with windows closed and screened with such items innocently in view are commonplace. It is obvious that a literal application of the statute would trap more of the innocent than the gamblers, which indicates its broad reach and demonstrates the lack of any rational connection between the act condemned (presence in the described circumstances) and the activity legitimately sought to be proscribed (gambling).

That suppression of gambling is within legislative power may be conceded. However, the means used to achieve such objective must comport with constitutional dictates. Where a statute creates a presumption which aids in convicting by presuming a necessary fact from the proof of another fact, the presumption does not comply with constitutional due process if the fact presumed is not rationally connected to the fact proven. *Turner* v. *United States,* 396 U.S. 398 (1970). It can be no different where an overly broad statute makes an otherwise innocent act a crime on the reasoning that such act may be evidence of other criminal activity and there is absent any rational connection between the two. And any attempt at judicial construction which would restrict the statute's application so that a rational connection between the two would result, even if possible, is not only impermissible but would make the statute vague. *State* v. *Abellano,* 50 Haw. 384, 441 P.2d 333 (1968).