64 P.3d 282

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Michelle LINDSTEDT, Defendant–Appellant.**

**No. 23815.**

Intermediate Court of Appeals of Hawai'i.

Jan. 31, 2003.

Warren C.R. Perry, Lihue, on the briefs, for defendant-appellant.

Tracy Murakami, Deputy Prosecuting Attorney, County of Kaua'i, on the briefs, for plaintiff-appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by FOLEY, J.

On May 4, 2000, Defendant–Appellant Michelle Lindstedt (Lindstedt) was charged by complaint with the following:

Count I: Disorderly Conduct, in violation of Hawaii Revised Statute (HRS) § 711–1101(1)(a) (1993);

Count II: Failure to Disperse, in violation of HRS § 711–1102 (1993);

Count III: Audio Devices, in violation of § 13–221–13(c), Hawai'i Administrative Rules (Department of Land and Natural Resources);

Count IV: Intoxication; Drug Incapacitation, in violation of § 13–221–24(a), Hawai'i Administrative Rules (Department of Land and Natural Resources); and

Count V: Intoxication; Drug Incapacitation, in violation of § 13–221–24(b), Hawai'i Administrative Rules (Department of Land and Natural Resources).

A bench trial was held on August 29, 2000 before The Honorable Clifford L. Nakea in the District Court of the Fifth Circuit, Lihue Division (the district court). The State dismissed Counts III, IV, and V. On September 5, 2000, Count I was dismissed and Lindstedt was found guilty as charged as to Count II. On September 14, 2000, the district court

entered its "Findings of Fact, Conclusions of Law," which ordered that Lindstedt was adjudged guilty of Failure to Disperse.

On appeal, Lindstedt contends that HRS § 711–1102 unreasonably infringes on the rights of privacy and freedom of movement or association and is unconstitutionally overbroad and vague. Lindstedt bases her arguments on Sections 2, 5, 6, and 7 of Article I of the Hawai'i Constitution.[1] We disagree with Lindstedt's contentions and affirm the September 14, 2000 "Findings of Fact, Conclusions of Law."

## I. BACKGROUND

The district court made the following findings of fact and conclusions of law:

### I. FINDINGS OF FACT

Following a trial on August 29, 2000, and a decision on September 5, 2000 regarding the above referenced parties, the Court finds:

1. That in the early morning hours of January 23, 2000 in an area makai [toward the sea] of the Wailua Golf Course, there were approximately 500 people assembled for a 21st birthday party for defendant's son, who organized the event;

2. That people among the crowd were drinking alcoholic beverages;

3. That there was amplified music played by a live bank [sic] on a stage under a tent erected on the beach;

4. That there were 4-wheel drive vehicles driving on the beach;

5. That there was fighting among the crowd;

6. That there was indiscriminate public urination;

7. That the police observed people drinking alcoholic beverages who appeared to be under the age of twenty-one;

8. That when the police officers tried to disperse the crowd, beer bottles were thrown at the officers, striking and injuring two of the officers;

9. That Police Officer Begley advised the defendant to leave the area or be arrested;

10. That defendant responded by telling Officer Begley that she would not leave the area without her son and that the officer would have to, and he did, arrest her; and

11. That defendant was a bystander in the immediate vicinity of the above described disorderly event.

### II. CONCLUSIONS OF LAW

Based on the above facts, the Court concludes beyond a reasonable doubt:

1. That more than six persons were participating in disorderly conduct which injured two officers and which was likely to cause substantial harm or serious inconvenience, annoyance, or alarm;

2. That the police officers ordered those in attendance to disperse to avoid more serious consequences;

3. That defendant knowingly refused to comply with Officer Begley's lawful order to disperse.

By Order of the Court, the defendant Michelle Lindstedt is hereby adjudged guilty of the offense of Failure to Disperse in violation of HRS Sec. 711–1102.

Lindstedt does not challenge any of the findings of fact or conclusions of law of the district court other than contending that HRS § 711–1102 is unconstitutional.

## II. STANDARD OF REVIEW

We review questions of constitutional law "by exercising our own independent constitutional judgment based on the facts of the case." *State v. Rogan*, 91 Hawai'i 405, 411, 984 P.2d 1231, 1237 (1999) (internal quotation marks omitted). Accordingly, we review questions of constitutional law de novo under the "right/wrong" standard. *State v. Mallan*, 86 Hawai'i 440, 443, 950 P.2d 178, 181 (1998).

Where it is alleged that the legislature has acted unconstitutionally, the Hawai'i Supreme Court has long held that "(1) legis-

---

1. Lindstedt does not contend that HRS § 711–1102 is an unconstitutional violation of freedom of association under Article I, Section 4 of the Hawai'i Constitution. We, therefore, do not address Section 4 in this opinion.

lative enactments are presumptively constitutional; (2) a party challenging a statutory scheme has the burden of showing unconstitutionality beyond a reasonable doubt; and (3) the constitutional defect must be clear, manifest, and unmistakable." *Convention Center Authority v. Anzai*, 78 Hawai'i 157, 162, 890 P.2d 1197, 1202 (1995) (internal quotation marks and brackets omitted).

> [W]e construe penal statutes narrowly, considering them in light of precedent, legislative history, and common sense.
>
> ... [W]here possible, we will read a penal statute in such a manner as to preserve its constitutionality.
>
> To accord a constitutional interpretation of a provision of broad or apparent unrestricted scope, courts will strive to focus the scope of the provision to a narrow and more restricted construction.
>
> Provisions of a penal statute will be accorded a limited and reasonable interpretation under this doctrine in order to preserve its overall purpose and to avoid absurd results.

Put differently, a statute will not be held unconstitutional by reason of uncertainty if any sensible construction embracing the legislative purpose may be given it. Mere difficulty in ascertaining its meaning, or the fact that it is susceptible to interpretation will not render it nugatory.

2. HRS § 711–1101 (1993) reads as follows:

§ 711–1101 **Disorderly conduct.** (1) A person commits the offense of disorderly conduct if, with intent to cause physical inconvenience or alarm by a member or members of the public, or recklessly creating a risk thereof, the person:
 (a) Engages in fighting or threatening, or in violent or tumultuous behavior; or
 (b) Makes unreasonable noise; or
 (c) Makes any offensively coarse utterance, gesture, or display, or addresses abusive language to any person present, which is likely to provoke a violent response; or
 (d) Creates a hazardous or physically offensive condition by any act which is not performed under any authorized license or permit; or
 (e) Impedes or obstructs, for the purpose of begging or soliciting alms, any person in any public place or in any place open to the public.
 (2) Noise is unreasonable, within the meaning of subsection (1)(b), if considering the nature and

*State v. Gaylord*, 78 Hawai'i 127, 137–38, 890 P.2d 1167, 1177–78 (1995)[.]

*State v. Bates*, 84 Hawai'i 211, 220, 933 P.2d 48, 57 (1997) (ellipsis omitted).

## III. DISCUSSION

### A. HAWAII REVISED STATUTES § 711–1102.

Hawaii Revised Statutes § 711–1102 reads as follows:

§ 711–1102 **Failure to disperse.** (1) When six or more persons are participating in a course of disorderly conduct [2] likely to cause substantial harm or serious inconvenience, annoyance, or alarm, a peace officer [3] may order the participants and others in the immediate vicinity to disperse.

(2) A person commits the offense of failure to disperse if the person knowingly fails to comply with an order made pursuant to subsection (1).

(3) Failure to disperse is a misdemeanor.

(Footnotes added.)

### B. HAWAII REVISED STATUTES § 711–1102 IS NOT UNCONSTITUTIONALLY VAGUE.

■ Lindstedt contends that HRS § 711–1102 is unconstitutionally vague under Sec-

purpose of the person's conduct and the circumstances known to the person, including the nature of the location and the time of the day or night, the person's conduct involves a gross deviation from the standard of conduct that a law-abiding citizen would follow in the same situation; or the failure to heed the admonition of a police officer that the noise is unreasonable and should be stopped or reduced.

The renter, resident, or owner-occupant of the premises who knowingly or negligently consents to unreasonable noise on the premises shall be guilty of a noise violation.

(3) Disorderly conduct is a petty misdemeanor if it is the defendant's intention to cause substantial harm or serious inconvenience, or if the defendant persists in disorderly conduct after reasonable warning or request to desist. Otherwise disorderly conduct is a violation.

3. In 2001, "peace officer" was changed to "law enforcement officer," which designation we use in this opinion.

tions 5[4] and 7[5] of Article I of the Hawai'i Constitution.

The Hawai'i Supreme Court has treated claims that a criminal statute is unconstitutionally vague as essentially facial attacks, subject to the following standard:

> Due process of law requires that a penal statute state with reasonable clarity the act it proscribes and provide fixed standards for adjudging guilt, or the statute is void for vagueness. Statutes must give the person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited so that he or she may choose between lawful and unlawful conduct.

*State v. Tripp,* 71 Haw. 479, 482, 795 P.2d 280, 282 (1990). This standard is essentially indistinguishable from the applicable standard under federal law. Thus, we have so far not departed from federal constitutional law in the area of "void for vagueness" challenges to criminal statutes.

> ... [U]nder the applicable federal law, a criminal statute is void for vagueness unless: it 1) gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he or she may act accordingly; and 2) provides explicit standards for those who apply the statute, in order to avoid arbitrary and discriminatory enforcement and the delegation of basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis.

*State v. Lee,* 75 Haw. 80, 92–93, 856 P.2d 1246, 1254 (1993) (internal quotation marks, citations, and brackets omitted); *see also*

4. Article I, § 5 of the Hawai'i Constitution provides:

**DUE PROCESS AND EQUAL PROTECTION**

Section 5. No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry.

5. Article I, § 7 of the Hawai'i Constitution provides:

*State v. Kamal,* 88 Hawai'i 292, 294–95, 966 P.2d 604, 606–07 (1998).

Because the Hawai'i Supreme Court has yet to address a void for vagueness challenge to HRS § 711–1102 and has adopted federal constitutional law in the void for vagueness challenges to criminal statutes, we look to the United States Supreme Court for guidance. *Bates,* 84 Hawai'i at 220–21, 933 P.2d at 57–58.

In *Colten v. Commonwealth of Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), the United States Supreme Court upheld a Kentucky criminal statute making it a crime to refuse to comply with a lawful order of the police to disperse. The relevant provisions of the statute read as follows:

> (1) A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse....

*Id.* at 108, 92 S.Ct. at 1956 (quotation marks omitted) (quoting Ky.Rev.Stat. § 437.016(1)(f) (Supp.1968)).

In upholding the Kentucky statute, the Supreme Court reasoned:

> We perceive no violation of the underlying principle that no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed. Here the statute authorized conviction for refusing to disperse with the intent of causing inconvenience, annoyance, or alarm. Any person who stands in a group of persons along a highway where the police are investigating a traffic viola-

**SEARCHES, SEIZURES AND INVASION OF PRIVACY**

Section 7. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

Lindstedt never explains how Section 7 on searches and seizures is relevant to her void for vagueness challenge.

tion and seeks to engage the attention of an officer issuing a summons should understand that he could be convicted under subdivision (f) of Kentucky's statute if he fails to obey an order to move on. The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited. We agree with the Kentucky court when it said: We believe that citizens who desire to obey the statute will have no difficulty in understanding it.

*Colten*, 407 U.S. at 110, 92 S.Ct. at 1957 (internal quotation marks, citations, parentheses, and ellipses omitted).

Just as the citizens of Kentucky will have no difficulty in understanding the criminal statute at issue in *Colten*, the citizens of this state should have no difficulty in understanding HRS § 711–1102. Each statute is violated when a person fails to comply with a law enforcement order to disperse. The Kentucky statute concerns a public place when a person congregates with other persons with intent to cause public inconvenience, annoyance or alarm, or recklessly creates a risk thereof. Hawaii Revised Statutes § 711–1102 concerns a person in the immediate vicinity of six or more persons participating in a course of disorderly conduct likely to cause substantial harm or serious inconvenience, annoyance, or alarm. The Kentucky statute requires the citizen to "move on" when ordered to disperse. The Hawai'i statute requires the citizen to leave the "immediate vicinity" of the six or more persons participating in the course of disorderly conduct. Under each statute it is the law enforcement officer who makes the determination that a group of persons are engaged in disorderly conduct and that a person either is partici-

pating in that conduct (Kentucky) or is in the immediate vicinity of the conduct (Hawai'i) prior to issuing the order to the person to disperse. Because HRS § 711–1102 is as clear as the Kentucky criminal statute upheld by the United States Supreme Court in *Colten* and our Hawai'i Supreme Court has adopted federal constitutional law in void for vagueness challenges to criminal statutes, we hold that HRS § 711–1102 is not unconstitutionally vague under either the Hawai'i or United States Constitutions.[6]

The sole authority cited by Lindstedt in her void for vagueness challenge to HRS § 711–1102, *State v. Shigematsu*, 52 Haw. 604, 483 P.2d 997 (1971), is inapposite. The statute challenged in that case, HRS § 746–6, read:

> *Presence in barricaded place.* Every person found present in any such room, house, or place barred or barricaded, or otherwise built or protected in a manner to make it difficult of access or ingress to police officers where are exhibited or exposed to view any cards, dice, dominoes, or any gambling layout, or any part of such layout or any other gambling implements whatsoever used in any game of faro, monte, roulette, tan, fan tan, or any banking or percentage game, played with cards, dice, dominoes, or any device for money, checks, credit, or anything representative of value, or any other game in which money or anything of value is lost or won, is guilty of a misdemeanor.

*Shigematsu*, 52 Haw. at 605 n. 1, 483 P.2d at 998 n. 1 (quotation marks omitted).

In concluding the statute in *Shigematsu* was vague and overly broad, the Hawai'i Supreme Court wrote:

> [T]he offense charged here is the presence of persons in a room barricaded or otherwise so built or protected to make access or ingress to police officers difficult and where gambling implements were exhibited or exposed.

---

6. For other unsuccessful void for vagueness challenges to failure to disperse/disorderly conduct statutes, *see City of Chicago v. Fort*, 46 Ill.2d 12, 262 N.E.2d 473 (1970); *State v. Martin*, 532 P.2d 316 (Alaska 1975); *State v. Ausmus*, 178 Or.App. 321, 37 P.3d 1024 (2001); *Sabel v. State*, 250 Ga. 640, 300 S.E.2d 663 (1983); *Commonwealth of*

*Pennsylvania v. Green*, 287 Pa.Super. 220, 429 A.2d 1180 (1981); *City of Oak Creek v. King*, 148 Wis.2d 532, 436 N.W.2d 285 (1989); *State v. Johnson*, 7 Wash.App. 527, 500 P.2d 788 (1972); *Commonwealth of Pennsylvania v. DeFrancesco*, 481 Pa. 595, 393 A.2d 321 (1978).

Any home built with locks in the doors would come within the term "any such room, house, or place ... built or protected in a manner to make it difficult of access or ingress to police officers." Also, the statute makes it an offense for any person to be present in such "room, house or place," where any gambling implements, such as cards, dice, dominoes, etc., are exhibited or exposed. Thus, it would appear that any person within a room of his home where cards, dice or chips are in view would be violating the statute.

*Id.* at 606–607, 483 P.2d at 999.

Hawaii Revised Statutes § 711–1102 does not suffer from the same breath and vagueness as the anti-gambling statute in *Shigematsu*. It is narrowly tailored to failing to disperse pursuant to a law enforcement order to leave the immediate vicinity of disorderly conduct. Its language is specific and clear, not broad and vague as the *Shigematsu* statute.

## C. HAWAII REVISED STATUTES § 711–1102 DOES NOT VIOLATE FREEDOM OF MOVEMENT, ASSOCIATION, OR PRIVACY.

█ Lindstedt contends that HRS § 711–1102 violates her rights to freedom of movement and association under Article I, Section 2 [7] of the Hawai'i Constitution and right to privacy under Article I, Section 6 [8] of the Hawai'i Constitution. The two cases Lindstedt cites for this contention are *Shigematsu, supra,* and *State v. Abellano,* 50 Haw. 384, 441 P.2d 333 (1968).

In *Shigematsu*, the Hawai'i Supreme Court held that a statute that made it a criminal offense to be in a room or place where gambling implements were exhibited or exposed to view violated Hawai'i constitutional rights of freedom of movement and association under Article I, Section 2 of the Hawai'i Constitution. The supreme court reasoned:

> [T]o determine the legality of the statute, we are required to weigh two conflicting interests: on one hand, the interest of the State to suppress gambling and the evils connected therewith; and on the other hand, the rights of the people to the freedom of movement and association.

> It may appear to some that the infringement imposed by this statute is not too great, and the crime charged is not too serious. However, neither the relative insignificance of the crime nor slightness of the penalty imposed should blind us to the potential threat that this type of law presents to the freedom of movement and association.... As we have stated, there is no question that the State may in the exercise of its police power enact legislation to proscribe gambling and thereby suppress the evils connected therewith. However, recognizing that the statute places an unlimited and indiscriminately sweeping infringement upon the freedom of movement and association, we believe that the statute goes much further than necessary to achieve its purpose.

*Shigematsu,* 52 Haw. at 611–12, 483 P.2d at 1001. The court in *Shigematsu* had found the statute at issue in the case to be so broad that people who entered the premises without knowing that gambling was taking place would be in violation of the statute. *Id.* at 608, 483 P.2d at 999. The court concluded that the statute was far too broad to accomplish the purpose of suppressing gambling. Such is not the case with HRS § 711–1102.

---

**7.** Article I, § 2 of the Hawai'i Constitution reads as follows:

### RIGHTS OF INDIVIDUALS

**Section 2.** All persons are free by nature and are equal in their inherent and inalienable rights. Among these rights are the enjoyment of life, liberty and the pursuit of happiness, and the acquiring and possessing of property. These rights cannot endure unless the people recognize their corresponding obligations and responsibilities.

**8.** Article I, § 6 of the Hawai'i Constitution reads as follows:

### RIGHT TO PRIVACY

**Section 6.** The right of the people to privacy is recognized and shall not be infringed without the showing of a compelling state interest. The legislature shall take affirmative steps to implement this right.

The only limit on a person's freedom of movement and association under HRS § 711–1102 is to comply with a law enforcement officer's order to leave the immediate vicinity of six or more persons participating in the course of disorderly conduct, likely to cause substantial harm or serious inconvenience, annoyance, or alarm.

 The interest of the State under HRS § 711–1102 is to allow law enforcement officers to stop disorderly conduct with its attendant harms to participants and by-standers. The statute's limit on freedom of association and movement is only within the immediate vicinity of the disorderly conduct. There is no "unlimited and indiscriminately sweeping infringement upon the freedom of movement and association" under HRS § 711–1102. Unlike the statute in *Shigematsu,* HRS § 711–1102 specifically targets the evil to be suppressed without any undue or unnecessary infringement on the freedom of movement and association under Article I, Section 2 of the Hawai'i Constitution.

*State v. Abellano, supra,* is less help to Lindstedt. In *Abellano,* the Hawai'i Supreme Court struck down an ordinance as unconstitutionally vague because the statute made it a crime to be "present at" a cockfight. The court did not address whether the ordinance "unconstitutionally and unreasonably infringes upon a person's freedom of locomotion and movement," which had been addressed by the trial court. 50 Haw. at 384, 441 P.2d at 334. The concurring opinion by Justice Levinson, in which Chief Justice Richardson joined, addressed the constitutionally guaranteed freedom of movement. Justice Levinson held that freedom of movement "is a vital aspect of the right of privacy" under Article I, Section 2, of the Hawai'i Constitution. *Id.* at 386–87, 441 P.2d at 335 (Levinson, J., concurring).[9] In holding that the anti-cockfight ordinance violated the right to privacy, Justice Levinson wrote:

　　The anti-cockfight ordinance is aimed at preventing cruelty to animals. Such legislation is a proper subject of the police power. Looking, however, to the sweeping

infringement on the freedom of movement and privacy, I think that the ordinance goes further than reasonably necessary to achieve its purpose. Making it a crime "to engage or participate in" a cockfight provides an effective basis for enforcing a policy against cruelty to animals without unnecessarily infringing on freedom of movement, particularly when considered in connection with the state statute on the subject.[18]

---

18. R.L.H.1955, § 262–3 provides as follows:
　　Any person who keeps or uses, or in any way is connected with or interested in the management of, or receives money for the admission of any person to, any place kept or used for the purpose of fighting or baiting any bull, bear, dog, cock or other creature, and every person who encourages, aids or assists therein, or who permits or suffers any place to be so kept or used, is guilty of a misdemeanor.

*Abellano,* 50 Haw. at 395, 441 P.2d at 340.

Hawaii Revised Statutes § 711–1102 is not the "sweeping infringement on the freedom to movement and privacy" Justice Levinson saw in the anti-cockfight ordinance. The anti-cockfight ordinance in *Abellano* suffered from the same defect as the anti-gambling statute in *Shigematsu*—going "further than reasonably necessary to achieve its purpose." *Abellano,* 50 Haw. at 395, 441 P.2d at 340. This is not the case with HRS § 711–1102. To prevent the substantial harm or serious inconvenience, annoyance or alarm to the public it is reasonably necessary for law enforcement to order those participating in the disorderly conduct and those in the immediate vicinity to disperse until the disorderly conduct comes to an end.

## IV. CONCLUSION

Accordingly, we affirm the district court's September 14, 2000 "Findings of Fact, Conclusions of Law," which ordered that Lindstedt was adjudged guilty of Failure to Disperse.

---

9. The right to privacy that was the subject of Justice Levinson's concurring opinion was subsequently adopted pursuant to the 1978 Constitu-

tional Convention of Hawai'i as Article I, Section 6 of the Hawai'i Constitution. *See State v. Mallan,* 86 Hawai'i 440, 950 P.2d 178 (1998).