932 P.2d 340

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Stanley Rock ZUKEVICH, Jr., Defendant–Appellant.**

**No. 17991.**

Intermediate Court of Appeals of Hawai'i.

Jan. 31, 1997.

Christopher R. Evans, on the brief, Honolulu, for defendant-appellant.

Loren J. Thomas, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and ACOBA and KIRIMITSU, JJ.

ACOBA, Judge.

We hold in the appeal of Defendant–Appellant Stanley R. Zukevich, Jr. (Defendant) from a February 8, 1994 first circuit court (court) judgment of conviction that 1) the

statement by the decedent, Theodore Walter Cuesta (Cuesta), just prior to being shot, was not inadmissible hearsay, 2) the written statement of Defendant's daughter, Kuulei Valmoja (Valmoja), which incorporated Cuesta's statement, while also hearsay, was properly admitted into evidence as a "prior inconsistent statement," 3) the prosecution did not commit misconduct by offering such statement into evidence, and 4) Defendant was not denied effective assistance of counsel because his counsel did make a "hearsay" objection to the statement.

## I.

Defendant was indicted on June 29, 1993 for murder in the second degree (Hawai'i Revised Statutes (HRS) § 707–701.5(1) (1993)). On December 16, 1993, a jury found him guilty of the lesser offense of manslaughter (HRS § 707–702 (1993)). Judgment was entered accordingly on February 8, 1994.

On the evening of June 25, 1993, Defendant shot and killed Cuesta, his brother-in-law, after Cuesta drove up to Defendant's driveway and began yelling at Defendant. Defendant testified that prior to the shooting and earlier the same day, Cuesta had threatened to shoot him and as a result, Defendant was afraid of Cuesta. Defendant denied hearing Cuesta say, "I no mo' gun." [1] Defendant's defense at trial was that he shot Cuesta in self-defense.

On June 26, 1993, at approximately 2:45 a.m., Valmoja gave Honolulu Police Department (HPD) Officer David Yomes (Officer Yomes) an oral statement which Officer Yomes reduced to writing because Valmoja's "hands couldn't stop shaking[.]" In this two-page signed written statement (written statement), Valmoja related that she overheard statements between Defendant and Cuesta prior to the shooting. Most pertinent was Cuesta's statement, "I no more gun," at the

time Defendant shot and killed him. On the same morning, Valmoja also spoke with HPD Detective Anderson Hee in an interview which was taped and transcribed.

During the trial, the State of Hawai'i (State) offered the written statement into evidence after Valmoja refused to confirm that she had told the police about Cuesta's remark. The court stated that it would "allow in [the written statement] under [Hawai'i Rules of Evidence (HRE)] 613 and 802.1" and received the written statement into evidence.[2]

## II.

## A.

Defendant's first point on appeal is that the court erred in receiving the written statement into evidence because it contained "the hearsay declaration of [Cuesta]." " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." HRE Rule 801(3). Hearsay is not admissible at trial unless it qualifies as an exception to the rule against hearsay. *State v. Eastman,* 81 Hawai'i 131, 136, 913 P.2d 57, 62 (1996), *State v. Canady,* 80 Hawai'i 469, 476, 911 P.2d 104, 111 (App. 1996); *see also* HRE Rule 802 ("Hearsay is not admissible except as provided by the[ ] [Hawai'i] [R]ules [of Evidence], or by other rules prescribed by the [Hawai'i] [S]upreme [C]ourt, or by statute.")

While the point is not raised by the parties, we recognize that Valmoja's written statement, which incorporated Cuesta's statement, is itself hearsay. Valmoja's written statement was made outside of court, not under oath, and offered at trial to prove the matters asserted therein. *See* HRE Rule 801(3). Thus, Cuesta's statement constituted

---

1. At trial, the prosecution characterized Cuesta's statement as "I no mo' gun." Valmoja's written statement and the transcript of Valmoja's taped interview with Detective Anderson Hee, referred to *infra*, show Cuesta's statement was, "I no more gun."

2. When the State offered Valmoja's written statement into evidence, defense counsel did not

raise, and the court did not consider whether Cuesta's statement, "I no more gun," constituted inadmissible hearsay. Defense counsel's failure to object to Valmoja's written statement on this ground is raised on appeal as ineffective assistance of counsel. Defense counsel, however, had apparently objected to the statement earlier in the case proceedings. *See infra* note 3.

hearsay within the hearsay statement of Valmoja.

According to HRE Rule 805, however, "[h]earsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in the[ ] rules."

> Because the principal concern in determining the admissibility of hearsay evidence is the assurance of trustworthiness, multiple hearsay creates a multi-level requirement for such assurance. However, if each level of hearsay independently meets the requirements for admissibility under an applicable hearsay exception, the circumstantial guarantee of trustworthiness for such a statement is as great as for single-level hearsay.

Commentary to HRE Rule 805 (1993). Initially, then, we must determine whether Cuesta's out-of-court statement was admissible as an exception to the hearsay rule as provided under the Hawai'i Rules of Evidence.

### B.

On appeal, the State maintains that Cuesta's statement, "I no more gun," was admissible under the hearsay exceptions of "present sense impression" (HRE Rule 803(b)(1)) [3], and "excited utterance" (HRE Rule 803(b)(2)).[4] We believe it would be permissible to receive the statement, "I no more gun," into evidence under either exception because the evidence at trial would support both exceptions.

HRE Rule 803 provides in relevant part that:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> . . . .

(b) Other exceptions.

> (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter.
>
> (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

Spontaneity is the common underlying factor that insures the trustworthiness of both the present sense impression and the excited utterance exceptions. 2 J. Strong, *McCormick on Evidence* § 268, at 207 (4th ed.1992) (hereinafter *McCormick* ). The Hawai'i Supreme Court has explained that

> "[t]he underlying theory of Exception (1) is that substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation. . . . The theory of Exception (2) is simply that circumstances may produce a condition of excitement which temporarily stills the capacity of reflection and produces utterances free of conscious fabrication. 6 Wigmore § 1474. p. 135. *Spontaneity is the key factor in each instance, though arrived at by somewhat different routes.*"

*State v. Moore,* 82 Hawai'i 202, 218, 921 P.2d 122, 138 (1996) (quoting Advisory Committee's Note to Federal Rules of Evidence (FRE) Rules 803(1) and 803(2)) (emphasis added).

The present sense impression exception differs from the excited utterance impression in that it lacks the "requirement of an exciting event." *McCormick, supra* § 271, at 213 (referring to a present sense impression as an "unexcited" statement of a

---

**3.** At trial, the State informed the court that in its opening statement the State intended "to use a statement by [Cuesta] that was overheard by the defendant's daughter immediately before the shooting." The State contended that "[i]t's a present sense impression under [HRE Rule] 803(b)(1)." Over defense counsel's objection that it was hearsay and "unreliable," the court stated that it was "going to allow" the State to "argue that and if the evidence comes in . . ., [the

court] will allow that under the hearsay rule exception that [the State] mentioned." Accordingly, the court admitted Cuesta's statement under the present sense impression exception to the hearsay rule.

**4.** The "excited utterance" exception to the hearsay rule is raised for the first time in the State's answering brief on appeal.

present sense impression). Further, the "[present sense impression exception] is limited to statements that describe or explain the event or condition" while "the [excited utterance exception] requires only that the statement relate to the [startling] event." Commentary to HRE Rule 803 (1993), *McCormick, supra* § 271, at 213–14. And while the present sense impression statement must be made while the declarant was actually "perceiving the event or condition" or immediately thereafter, the excited utterance statement may be made during the "duration of the stress caused by the exciting event." *See McCormick, supra* § 271, at 214.

### 1.

■ The assumption underlying the present sense impression exception is

> that statements of perception substantially contemporaneous with an event are highly trustworthy because: (1) as the statement is simultaneous with the event, there is no memory problem; (2) there is little or no time for calculated misstatement, and (3) the statement is usually made to one who has equal opportunity to observe and check misstatements.

4 J.B. Weinstein & M.A. Berger, *Weinstein's Evidence,* ¶ 803(1)[01] (Supp.1996); *see also* A. Bowman, *Hawaii Rules of Evidence Manual* § 803(b)(1), at 340 (1990).

At trial, Defendant testified that following a confrontation earlier in the day, he "thought [Cuesta] was going to come over [to] my house and shoot me." Later, at home, Defendant heard a gunshot which he believed was fired by Cuesta. According to Defendant, Defendant then put a gun in his back pocket and walked out to Defendant's garage. Defendant saw Cuesta drive into Defendant's driveway, and Defendant approached Cuesta. Defendant recounted that when he stopped in front of Cuesta's car, Defendant asked Cuesta, "What you got against me, you know, what the fuck I did now?" Defendant maintained that Cuesta then threatened to "blow [Defendant] away" and "kill" him, and Defendant responded, "What, you like kill me?". When Cuesta said, "I going shoot you," Defendant explained he "snapped" and "just shot." De-

fendant did not recall Cuesta saying, "I no more gun."

In the written statement, Valmoja reported she heard a gunshot before Cuesta drove up to the house. The written statement indicates Defendant said, "What you fucka, you looking for me[?] I heard the gunshot." Then, according to the statement, Cuesta said, "I no more gun," and "two shots went off."

Cuesta's statement, "I no more gun," may be viewed as a response to Defendant's apparent accusation that Cuesta had shot at him. Cuesta's statement, "I no more gun," describes the "condition" of being unarmed. By the nature of his statement, Cuesta perceived the condition when he made the statement. Cuesta's assertion was made in seeming response to Defendant's statement, "You looking for me[?] I heard the gunshot." Arguably, then, the "substantial contemporaneity" of the condition and the statement describing the condition in response to Defendant's accusation established the trustworthiness of the statement as a "present sense impression."

### 2.

■ Because of the proximity of Cuesta's statement, "I no more gun," to the shots fired by Defendant, Cuesta's statement may also be viewed as related to the startling event of being shot.

The Hawaiʻi Supreme Court has said that:

> "The assumption underlying [the excited utterance] exception is that a person under the sway of excitement precipitated by an external startling event will not have the reflective capacity essential for fabrication and that, consequently, any utterance will be spontaneous and trustworthy."

*State v. Clark,* 83 Hawaiʻi 289, 296, 926 P.2d 194, 201 (1996); *Moore,* 82 Hawaiʻi at 218, 921 P.2d at 138 (quoting Weinstein, *supra* ¶ 803(2)[01], at 803–101).

■ To meet the foundational requirements imposed by HRE Rule 803(b)(2), the proponent of the statement must establish that: (1) a startling event or condition occurred; (2) the statement was made while

the declarant was under the stress of excitement caused by the event or condition; and (3) the statement related to the startling event or condition. *Clark*, 83 Hawai'i at 296, 926 P.2d at 201; *Moore*, 82 Hawai'i at 218, 921 P.2d at 138.

As to the first and second requirement, it may be inferred from the evidence that Cuesta's statement, "I no more gun," was made while he was under the stress of excitement caused by the imminent threat of death. As to the third requirement, Cuesta's statement, "I no more gun," was related to the "startling event" of facing death.

Accordingly, Cuesta's statement may be treated as related to and made under the stress caused by the impending shooting and, hence, not a "product of reflective thought." *See Clark*, 83 Hawai'i at 298, 926 P.2d at 203; *Moore*, 82 Hawai'i at 222, 921 P.2d at 142.[5]

### C.

### 1.

Defendant also asserts that in admitting Valmoja's written statement the court did not consider HRE Rules 804(a)(4)[6] and 804(b)(6)[7] "relating to the unavailability of the declarant [Cuesta] and the foundational requirement before such a statement can be admitted," but Defendant fails to indicate how this is material to his appeal. Defen-

dant appears to argue that because Cuesta, as a declarant, was deceased, his statement may only be admitted under HRE Rule 804 which allows certain hearsay statements to be received in evidence "if the declarant is unavailable as a witness." "The scheme of this rule is that the [hearsay] exceptions collected in subsection [HRE Rule 804](b) all depend upon a foundation requirement that the hearsay declarant be 'unavailable' as that term is defined in subsection (a)." Commentary to HRE Rule 804 (1993).

On the other hand, Cuesta's statement was admissible under HRE Rule 803 without regard to proof of his availability as a witness. HRE Rule 803 exceptions are admissible regardless of the availability of the declarant. In fact, this factor is the primary distinguishing characteristic between HRE Rules 803 and 804. Commentary to HRE Rule 803 (1993) ("As the title of Rule 803 suggests, the various exceptions to the hearsay ban collected in [HRE Rule 803] do not depend upon the present status or whereabouts of the decedent."). Thus, the "availability of the declarant as a witness is in all instances immaterial to the question of admissibility." *Id.*

Moreover, HRE Rule 804(b)(6), if satisfied, would only provide another means for admitting Cuesta's statement. The State was not obligated to offer Cuesta's statement as an exception under HRE Rule 804 if the state-

---

5. We reach our conclusion that the "excited utterance" exception to the hearsay rule applies in this instance despite the State's failure to claim this exception at trial. The court's allowance of the testimony under the "present sense impression" exception, if error, was harmless because of our holding that Cuesta's statement was also admissible under the "excited utterance" exception. *Cf. State v. Moore*, 82 Hawai'i 202, 217–18, 921 P.2d 122, 137–38 (1996) (holding that the appellate court need not decide if the trial court erred in admitting evidence under HRE Rule 803(b)(3), "then existing mental, emotional, or physical condition," because if there was error, it was harmless beyond a reasonable doubt because the statement was admissible under HRE Rule 803(b)(2), the "excited utterance" exception).

6. HRE Rule 804(a)(4) states in relevant part:

(a) Definition of unavailability. "Unavailability as a witness" includes situations in which the declarant:

. . . .

(4) Is unable to be present or to testify at the hearing because of death. . . .

. . . .

7. In 1993, HRE Rule 804(b)(6) was amended to 804(b)(7). No textual changes were made. HRE Rule 804(b)(7) (1993) provides in pertinent part:

(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

. . . .

(7) Other exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts, and (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

ment was admissible under HRE Rule 803. Indeed, the foundational requirement for HRE Rule 804(b) exceptions is a concession to the recognition that HRE Rule 803(b) exceptions otherwise possess a higher degree of reliability than do HRE Rule 804(b) exceptions:

> The underlying theory of the Rule 804 exceptions to the hearsay ban is that they possess a degree of reliability which, while not necessarily as high as that characterizing the Rule 803(b) exceptions, justifies admission of declarants' statements provided the declarants cannot be produced to testify.

Commentary to HRE Rule 804 (1993).

### 2.

 Defendant further argues that "[c]onsideration must ... be given to the defendant's constitutional right to confront and to cross-examine the declarant." In light of our prior holding, however, Cuesta's statement is "reliable" because for purposes of the confrontation clause under the United States and Hawai'i Constitutions, "[r]eliability is shown *if the evidence falls within a firmly rooted hearsay exception* or upon a showing of particularized guarantees of trustworthiness." *Moore,* 82 Hawai'i at 224, 921 P.2d at 144 (citations and internal quotation marks omitted) (emphasis added).

### D.

Having concluded that Cuesta's statement was admissible as an HRE Rule 803 exception to the hearsay rule, we must next consider whether the written statement itself is admissible under another exception to the rule against hearsay.

The written statement was offered under HRE Rule 802.1(1) which "provides for substantive use of most prior inconsistent witness statements as an exception to the hearsay rule." Commentary to HRE Rule 613 (1993); *see also Canady,* 80 Hawai'i at 480, 911 P.2d at 115 (stating that HRE Rule 802.1 adopted federal exception to common law allowing "prior inconsistent statements to be used as substantive proof of the matters

asserted in the statement" if the statement's trustworthiness is assured).

HRE Rule 802.1 states in pertinent part:

> **Rule 802.1 Hearsay exception; prior statements by witnesses.** The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:
>
> (1) Inconsistent statement. The declarant is *subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is offered in compliance with rule 613(b),* and the statement was:
>
> . . . .
>
> (B) *Reduced to writing and signed* or other wise adopted or approved by the declarant; . . .

(Emphases added.)

 The foundational requirements for evidence admitted pursuant to HRE Rule 802.1(1)(B) are as follows:

> (1) a witness must testify about the subject matter of his or her prior statements so that the witness is subject to cross-examination concerning the subject matter of those prior statements; (2) the witness's prior statements must be inconsistent with his or her testimony; (3) the prior inconsistent statements must be reduced to writing and signed or otherwise adopted or approved by the witness; (4) the prior inconsistent statements must be offered in compliance with HRE Rule 613(b), which requires that, on direct or cross-examination, the circumstances of the prior inconsistent statements have been brought to the attention of the witness, and the witness has been asked whether he or she made the prior inconsistent statements.

*Eastman,* 81 Hawai'i at 137, 913 P.2d at 63 (footnote omitted); *see also Canady,* 80 Hawai'i at 480–81, 911 P.2d at 115–16.

We believe the four fundamental requirements for admissibility were met:

 First, Valmoja recalled giving a written statement to Officer Yomes and was examined on her recollection of the statement given. During his cross-examination of Val-

moja, defense counsel elicited testimony that she had been drinking at the time she gave the statement to Officer Yomes. Valmoja also stated that she "did not know that [she was] going to adopt th[e] statement to be used in a court of law" when she signed the written statement.

Defendant's cross-examination of Valmoja thus "satisfied constitutional and trustworthiness concerns over admitting [Valmoja's prior inconsistent statement] into evidence ... because the cross-examination gave [Defendant] the opportunity to have [Valmoja] fully explain to the trier of fact why her in-court and out-of-court statements were inconsistent, which, in turn, enabled the trier of fact to determine where the truth lay." *Eastman*, 81 Hawai'i at 139, 913 P.2d at 65; *Canady*, 80 Hawai'i at 480–81, 911 P.2d at 115–16 (holding that "HRE Rule 802.1(1) requires, as a guarantee of the trustworthiness of a prior inconsistent statement, that the witness be subject to cross-examination about the subject matter of the prior statement, that is, that the witness be capable of testifying substantively about the event, allowing the trier of fact to meaningfully compare the prior version of the event with the version recounted at trial...."). Hence, Valmoja was subject to cross-examination concerning the subject matter of her prior written statement as required by HRE Rule 802.1.

Second, Valmoja's written statement related that she heard her uncle say, "I no more gun." Valmoja's testimony at trial, on the other hand, was that she did not tell Officer Yomes that she heard Cuesta say, "I no mo' gun" and that she "never said" Cuesta had said, "Well, I no mo' gun with me, I no mo' gun." Thus, Valmoja's prior written statement was inconsistent with her trial testimony.

Third, Valmoja's prior statements were reduced to writing in the form prepared by Officer Yomes and signed by her.

Fourth, Valmoja was reminded about the circumstances of her prior inconsistent statement when the prosecution asked her whether she "recall[ed] making a statement to Officer Yomes and a detective." Valmoja answered affirmatively. Finally, the prosecutor also asked Valmoja whether she had made the prior inconsistent statement when she "told Officer Yomes that [she] heard [her] uncle say, 'I no mo[re] gun.'" The prosecution thus complied with HRE Rule 613(b) before offering Valmoja's prior inconsistent statement in evidence.

We hold, then, that Valmoja's written statement was a "prior inconsistent statement offered in compliance with HRE Rule 613(b) and was properly admitted as an exception to the hearsay rule under HRE Rule 802.1 for 'substantive use' at trial." *See Eastman*, 81 Hawai'i at 137, 913 P.2d at 63; *cf. Canady*, 80 Hawai'i at 480–81, 911 P.2d at 115–16.

### III.

Defendant raises two other points on appeal. He contends that the prosecutor committed misconduct in "manag[ing] to get before the jury" Cuesta's statement, "I no more gun," because it was "inadmissible hearsay." Defendant further contends that he was denied effective assistance of counsel because his trial attorney "failed to object to [Cuesta's] statement" on the ground that it was "inadmissible hearsay." As we pointed out, however, defense counsel apparently did object to the hearsay nature of Cuesta's assertion. *See infra* note 3. In any case, because we have held that Cuesta's statement was admissible, we do not agree with these points.

### IV.

For the foregoing reasons, the February 8, 1994 judgment is affirmed.