STATE OF HAWAI`I, Plaintiff-Appellee,
v.
RICHARD A. HEYER, Defendant-Appellant
No. 27126.
Intermediate Court of Appeals of Hawaii.
January 8, 2008.
On the briefs:
Gregory T. Grab, for Defendant-Appellant.
Peter A. Hanano, Deputy Prosecuting Attorney, County of Maui, for Plaintiff-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., WATANABE and FUJISE, JJ.
Defendant-Appellant Richard A. Heyer (Heyer), appeals from two Notices of Entry of Judgment and/or Order filed on January 6, 2005 in the District Court of the Second Circuit, Wailuku Division (district court).[1] The first was entered in Case No. 2P104-01573, and the second was entered in Case No. 2P104-01574.
In Case No. 2P104-01573, Heyer was charged with engaging in "illegal commercial activity" within a forest reserve, in violation of Hawaii Administrative Rules (HAR) XX-XXX-XX,[2] and in Case No. 2P104-01574, with "no blaze orange garment," in violation of HAR XX-XXX-XX(g)(1).[3] The charges stemmed from an incident on June 18, 2004 in which Heyer was paid to take several individuals on a guided feral goat hunt in the Kula Forest Reserve. The district court found Heyer guilty of both charges,[4] and fined him $150 for violating HAR § 13-104-24, and $100 for violating HAR XX-XXX-XX(g)(1).
Heyer raises the following points of error on appeal:
(1) "The trial court clearly erred when it found that Heyer did not have a written permit to engage in commercial activities."
(2) "The trial court erred as a matter of law when it concluded that Heyer's hunting guide license was not a written permit to engage in commercial activities in a forest reserve.
3) "The trial court erred as a matter of law when it failed to conclude HAR § 13-104-24 was unconstitutionally vague."[5]
After a careful review of the record and briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Heyer's points of error as follows:
(1) We consider points of error 1 and 2 together, since they raise the same underlying question: was Heyer's hunting guide license, issued pursuant to Hawaii Revised Statutes (HRS) 183D-25.5 (Supp. 2006), a "written permit" that authorized him to engage in commercial activities within the Kula Forest Reserve? We conclude that it was not, and that accordingly both points of error lack merit.
HRS § 183D-25.5 provides in pertinent part:
Hunting guides; licensing and reporting requirements. (a) No person shall engage in the business of soliciting and guiding clients for the purpose of taking any game bird or mammal without first procuring a hunting guide license.
(b) A hunting guide license shall be issued to any person who possesses a valid state hunting license and registers with the department; provided that hunting guides shall provide service only to clients with a current state hunting license, unless the client is otherwise exempted by the department.
The statute does not address where guided hunting activities can take place; rather, it establishes standards for the qualifications of the guides and their clients. The legislative history of the bill that was codified as § 183D-25.5 confirms that the primary purpose of the statute was to protect consumers and enhance public safety by ensuring that hunting guides and the people they lead have at least some minimal level of training. See Sen. Stand. Comm. Rep. No. 2012, in 1996 Senate Journal, at 980 ("Your Committee believes that this type of regulation is essential for both the protection of the fledgling profession of guiding and for the protection of their hunter clients."); Sen. Stand. Comm. Rep. No. 1703, in 1996 Senate Journal, at 859 ("Your Committee further finds that some type of government oversight of these expeditions is necessary, first, to ensure the visiting hunter's safety, and secondly, to provide some type of quality control regarding guide services."); House Stand. Comm. Rep. No. 1019-96, in 1996 House Journal, at 1432 ("The provisions in this bill protect and serve consumers by establishing a central registry for hunting guides, and guaranteeing that hunting guides have a basic minimal knowledge of hunting safety and ethics."); House Stand. Comm. Rep. No. 1541-96, in 1996 House Journal, at 1644 ("The purpose of this bill is to establish hunting licensing requirements to ensure the protection of hunting guides and their clients ").
In contrast to 183D-25.5, which focuses on protecting the public by ensuring that hunting guides and their clients are properly trained, HAR § 13-104-24 serves a distinct regulatory purpose: controlling activity within forest reserves. 13-104-1 ("The purpose of these rules is to regulate activity within forest reserves established pursuant to sections 183-11 and 183-15, [HRS]."); see HRS 183-2 (1993) ("Subject to chapter 91, [the department of land and natural resources (DLNR)] shall adopt, amend, and repeal rules for and concerning the preservation, protection, regulation, extension, and utilization of forest reserves designated by the [DLNR]."). HAR chapter 104 contains numerous restrictions on the activities that can be conducted in forest reserves, one of which is XX-XXX-XX's prohibition on commercial activity without a permit. These limitations recognize that forest reserves are a scarce and potentially fragile resource. See, e.g., HAR XX-XXX-XX ("Permits for access to or entry into forest reserves may be required . . . [t]o control the number of people using a forest reserve or an area within a forest reserve in order to minimize the impact upon environmentally sensitive area[.]").
Heyer's interpretation of HAR XX-XXX-XX and HRS § 183D-25.5 would frustrate the purpose of HAR § 13-104-24's prohibition on commercial activity without a permit, because it would divest DLNR of the discretion to determine whether a particular guided hunting activity was appropriate for a particular forest reserve. His interpretation is inconsistent with the plain language of the provisions, as well as with their intent.
Accordingly, we hold that a hunting guide license issued under HRS 183D-25.5 is not a "written permit" within the meaning of HAR § 13-104-24. Thus, the district court did not clearly err in finding that Heyer did not have the required permit, nor did it err as a matter of law in determining that Heyer's hunting guide license did not satisfy the permit requirement.
(2) Heyer's argument that HAR XX-XXX-XX is unconstitutionally vague is without merit. The plain language of HAR XX-XXX-XX gives a person of ordinary intelligence reasonable notice that the person may not engage in any kind of commercial activity within a forest reserve without first receiving a written permit from the board, or its authorized representative, to engage in that commercial activity within the forest reserve. HAR XX-XXX-XX also provides sufficiently explicit standards for application in order to avoid arbitrary and discriminatory enforcement by DLNR officers. See State v. Lindstedt, 101 Hawai`i 153, 157, 64 P.3d 282, 286 (2003). While the term "written permit" is not defined in HAR XX-XXX-XX or the related provisions in HAR chapter 104, for the reasons set forth above, we do not believe that the requirement of a written permit was vague as applied to Heyer in the circumstances of this case. State v. Marley, 54 Haw. 450,457, 509 P.2d 1095, 1101 (1973) (the defendant must show that the statute as applied to him or her is invalid).
Therefore,
IT IS HEREBY ORDERED that the Notices of Entry of Judgment and/or Order filed on January 6, 2005 in Case Nos. 2P104-01573 and 2P104-01574 in the District Court of the Second Circuit, Wailuku Division, are hereby affirmed.
NOTES
[1] The Honorable Mary Blaine Johnston presided.
[2] Hawaii Administrative Rules (HAR) § 13-104-24 states:

Commercial activities. No person shall engage in commercial activities of any kind in a forest reserve without a written permit from the board [of land and natural resources] or its authorized representative.
[3] HAR § 13-123-22, which is entitled "Conditions and restrictions," provides in relevant part:

(g) The following general restrictions shall also apply:
(1) No person shall hunt, serve as a guide, accompany, or assist a hunter in any hunting area where firearms are permitted without wearing an exterior garment (shirt, vest, jacket, or coat) made of commercially manufactured, solid blaze-orange material or solid blaze-orange mesh material with a maximum mesh size of one-eighth inch. (All types of camouflage orange are prohibited for these garments). When carrying game or wearing a back pack, the blaze orange on the upper torso must be visible from both front and back[.]
[4] Although Heyer was charged in case no. 2P104-01573 with violating HAR § 13-104-24, the Notice of Entry of Judgment and/or Order filed on January 6, 2005 states that the "violation section" was "LNR XX-XXX-XX." To the extent that this document suggests that Heyer was convicted of violating a rule other than HAR § 13-104-24, it appears that a clerical error was made since it is clear from the district court's oral ruling that the court convicted Heyer of violating HAR § 13-104-24. Since neither party has raised this issue on appeal, we do not address it here.
[5] In his reply brief, Heyer also contends that the State of Hawai`i failed to prove that he acted "intentionally, knowingly or recklessly." However, because this issue was not included by Heyer in his points of error in his opening brief and was not argued by him in that brief, we will not address it. See Hawai`i Rules of Appellate Procedure Rule 28(b)(4)(D) ("Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented.") and Rule 28(b)(7) ("Points not argued may be deemed waived.").